UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Meineke Franchisor SPV LLC, *Plaintiff*, v. Kevin Moriarty, *Defendant*. | No. 25 CV 9239 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Plaintiff Meineke Franchisor SPV LLC ("Meineke") filed suit against ex-franchisee Defendant Kevin Moriarty alleging that he failed to make certain payments, and that he continues to use Meineke's trademarks even after it terminated his franchise. It therefore sues for breach of contract, as well as for trademark violations and unfair competition under the Lanham Act, and in the interim has moved for a preliminary injunction requiring Moriarty to (1) cease and desist from using its trademarks, (2) remove and deliver to Meineke all marked materials, (3) file a notice of compliance, and (4) pay costs and attorney's fees. The court grants the preliminary injunction in part, ordering Moriarty to cease use of and remove Meineke's marks.

I.  Background

Meineke is in the business of franchising vehicle repair centers that operate under a "standard, unique, and uniform system Meineke developed." [Dkt. 26-2, at 2 ¶¶ 6, 8.[1]] Its primary source of revenue is franchise royalties. [*Id.*, at 3 ¶ 9.] Pursuant to a franchise agreement, Meineke permits franchisees to use its owned trademarks, *id.*, at 63, which are registered with the United States Patent and Trademark Office. [*Id.*, at 13–34.]

Defendant Kevin Moriarty has operated a franchise since 1985. [Dkt. 33-1, ¶ 1.] He entered into his most current agreement ("the Franchise Agreement") in April 2016, permitting him to operate a franchise on 10716 S. Western Avenue, Chicago, Illinois 60638. [*Id.*, ¶ 2.] According to him, the relationship was successful until Meineke developed and sought to implement a new accounting software in July 2014, despite inadequately training him on how to use it. [Dkt. 33-1, ¶¶ 3–5.]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

On November 7, 2024, as permitted by the Franchise Agreement, Meineke provided Moriarty notice of default after he failed to comply with his payment obligations. [Dkt. 26-2, at 73, 98.] Thirty-four days later, on December 11, Meineke terminated the franchise after Moriarty failed to cure his default. [*Id.*] Moriarty disputes neither that he failed to make certain payments, nor that the Franchise Agreement was terminated. [Dkt. 36, ¶¶ 42, 80.] He did, however, make some payments through January 2025, *see* dkt. 33-2, at 1, but no such payments are currently being made. [Dkt. 36, ¶ 85.] He says also that he discussed reinstatement with Meineke, but that Meineke instead filed suit. [Dkt. 33-1, ¶ 7.]

The Franchise Agreement establishes that, upon termination, an ex-franchisee will cease use of Meineke's trademarks and imitation, cancel its own registrations, notify telephone directories to remove listings, and remove signs and other advertising materials. [Dkt. 26-2, at 76–77.] Meineke reminded Moriarty of these obligations in its Notice of Termination [*Id.*, at 98–99.] Moriarty, however, has continued to operate as a Meineke center, with Meineke's logos and trade name visible at his premises—including on a roadside billboard. [Dkt. 26-1, at 3.]



[*Id.*, at 3.] His business card still says Meineke. [*Id.*, at 4.] Again, Moriarty disputes none of this. [Dkt. 36, ¶ 82.]

Meineke has therefore sued for breach of contract, and for trademark infringement and unfair competition under the Lanham Act. It now moves for a preliminary injunction, restraining Moriarty from using its trademarks. [Dkt. 25.]

## II.    Legal Standard

A preliminary injunction is an "extraordinary remedy," and the movant bears the burden of showing it warrants relief. *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1188 (7th Cir. 2023) (citing *Winter v. Natural Resources Defense Council, Inc.*,

2

555 U.S. 7, 24 (2008) and *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). To succeed, it "need not show that it definitely will win the case, but it must demonstrate at a minimum how it proposes to prove the key elements." *Illinois Tamale Co., Inc. v. LC Trademarks, Inc.*, 164 F.4th 648, 655 (7th Cir. 2026) (quoting *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023)) (internal quotation marks omitted). It must first show (1) "that it is likely to succeed on the merits of its claims, (2) "that traditional legal remedies would be inadequate," and (3) "that it would suffer irreparable harm without injunctive relief." *Grubhub*, 80 F.4th at 843 (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021)). Upon such a showing, the court balances "the harm of denying an injunction to the movant" with the "harm of granting an injunction to the nonmovant," applying a sliding scale so that "the greater the movant's likelihood of success on the merits, the less the harms need be in its favor." *Id.* at 844. "The court also considers the public interest." *Id.*

### III. Analysis

#### A. Likelihood of Success on the Merits

To establish the first threshold showing, a movant must show "more than a mere possibility of success on the merits." *Illinois Tamale*, 164 F.4th at 654 (quoting *Life Spine*, 8 F.4th at 540) (distinguishing this as more demanding than a "better than negligible chance").[2] Such success need only be shown for "at least one of [the] claims, not all of them" if it is sufficient for the preliminary injunction to issue. *Blakelick Props., LLC v. Vill. of Glen Ellyn*, 2025 WL 1348569, at *2 (N.D. Ill. May 8, 2025) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008), *abrogated on other grounds by Nken*, 556 U.S. at 434)); *Doe #1 v. Trump*, 2025 WL 1341711, at *12 (N.D. Ill. May 8, 2025). *See also Storck USA, L.P. v. Farley Candy Co.*, 797 F. Supp. 1399, 1405 n.5 (N.D. Ill. 1992) ("Because the court finds that [plaintiff] has established some likelihood of success on the merits with respect to its Lanham Act claim, and is entitled to a preliminary injunction on that basis alone, the court need not and does not address [its] likelihood of success on its other claims.")

Claims for trademark infringement and unfair competition under the Lanham Act require "(1) that [the] mark be validly registered and (2) that [defendant's] use be likely to cause confusion among consumers." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019); 15 U.S.C. § 1114 (1)(a). Meineke has presented evidence of both the registrations and of Moriarty's use, and Moriarty disputes neither. [*See* Dkt. 26-1 (private investigator's report of ongoing use of logos and trade name); Dkt.

---

[2] Many of the below-cited cases were decided under a better-than-negligible standard. The court does not believe this bears on their relevance, since their conclusions follow from presumptions and findings of law. It does not doubt that these courts would reach the same conclusions under the more exacting standard.

3

26-2, at 15–34 (trademark registrations); Dkt. 36, ¶¶ 77, 82 (Moriarty admitting registration and use).] The question, then, is consumer confusion.

"[I]t is a 'well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement.'" *7-Eleven, Inc. v. Spear*, 2011 WL 830069, at *5 (N.D. Ill. Mar. 3, 2011) (quoting *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)). This is because a "licensee who once had authorization becomes associated in the public mind with the licensor or franchisor." *Burger King Corp. v. Agad,* 911 F. Supp. 1499, 1504 n.4 (S.D. Fla. 1995) (quoting 3 J. McCarthy, Trademarks and Unfair Competition § 25.07[1], at 25–48.2 (3d ed.1994)). As the Seventh Circuit has observed, the "purpose of a trademark, after all, is to identify a good or service to the consumer, and identity implies consistency." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989). Confusion is therefore "inevitable" and "exists as a matter of law." *7-Eleven*, 2011 WL 830069, at *5 (quoting *Dunkin' Donuts Franchised Restaurants LLC v. Elkhatib*, 2009 WL 2192753, at *5 (N.D. Ill. July 17, 2009) and *Bunn–O–Matic Corp. v. Bunn Coffee Serv.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000). *See also Burger King Corp. v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983) ("many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement").

Moriarty does not meaningfully dispute this, responding only that these are "factual issues that should be resolved at trial in the context of the purported Franchise Agreement," and more broadly arguing that Meineke breached the Franchise Agreement first, and that it continued accepting payments through January 2025, even after terminating the agreement. [Dkt. 33, at 4–5.] The court cannot agree. First, at this juncture, Meineke need only show "more than a mere possibility of success on the merits," *Illinois Tamale*, 164 F.4th at 654, and, as discussed, Moriarty's status as a holdover franchisee establishes *at least* that. Second, the context of the Franchise Agreement is irrelevant to the trademark inquiry. Moriarty admits that the Franchise Agreement was terminated. [Dkt 36, ¶ 80.] "Once a franchise has been terminated, the franchisee cannot be allowed to keep on using the trademark." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989). Therefore, "[w]hether the franchise agreement was legally terminated is not a defense to trademark infringement." *Azhar Chaudhry v. Int'l House of Pancakes, LLC*, 2015 WL 5159859, at *4 (N.D. Ill. Aug. 26, 2015). Other remedies may be available, such as suing for breach of contract, "but continued use of the trademarks is not such a remedy." *Jake Flowers, Inc. v. Kaiser*, 2002 WL 31906688, at *5 (N.D. Ill. Dec. 31, 2002) (citing *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 282 (7th Cir. 1992)).

This is true for both the trademark and unfair competition claims, *7-Eleven*, 2011 WL 830069, at *5 n.3 (collecting cases), and so the court finds Meineke's

4

likelihood of success more than adequately established. *See Dunkin' Donuts*, 2009 WL 2192753, at *4–5 (describing a similarly-situated plaintiff as having established "much more than a mere likelihood of success," and "highly likely to ultimately prevail in this matter"). As such, the court need not consider the likelihood of success of Meineke's contract claim, since its resolution is irrelevant to the Lanham Act claims and is not necessary for the injunction to issue.

### B.     Inadequate Remedy at Law and Risk of Irreparable Harm

The Seventh Circuit has "clearly and repeatedly held that damage to a "trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (collecting cases). Indeed, the harm is presumed in these cases, and the Seventh Circuit is among many courts to find that such damages "are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Dunkin' Donuts*, 2009 WL 2192753, at *4 (collecting cases and quoting *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (internal quotation marks omitted). This follows from its observation that "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Re/Max*, 272 F.3d at 432 (quoting *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) (internal quotation marks omitted).

Such is true here. Moriarty reasons that, because Meineke permitted him "to continue operating the business during reinstatement discussions and accepted thousands of dollars in payments during and after the alleged termination period," it cannot credibly claim that such use imminently threatens its goodwill. [Dkt. 33, at 5.] This argument is without merit; as of today, Meineke is accepting nothing and knows nothing of the services he provides, or of the suppliers he uses. [Dkt. 35-1, ¶ 27.] Nor can it "monitor, visit, and ensure quality services to customers" or "mitigate and assist customers with issues arising from Mr. Moriarty's operation." [*Id.*, ¶¶ 25–26.] This is precisely what the Seventh Circuit has considered 'irreparable harm,' and is particularly relevant given that Meineke has previously had to mitigate Moriarty's customer disputes.[3] [*Id.*, ¶ 24.] Neither the parties' prior relationship nor any past payments—which, to be sure, ended more than a year ago, *see* dkt. 36, ¶ 85—do anything to overcome the presumption of harm associated with Meineke's present and ongoing loss of control.

Moriarty also argues that, because Meineke also seeks actual monetary relief, there is an adequate remedy at law. [Dkt. 33, at 5.] That damages are available, though, does not mean the remedy at law is necessarily adequate. *See Wei v. Rocky*

---

[3]     Regardless, the Seventh Circuit has made clear that the injury exists independent of any actual "deleterious" action on the ex-franchisee's part. *Re/Max*, 272 F.3d at 432.

5

*Point Int'l LLC*, 2016 WL 7046802, at *2 (E.D. Wis. Dec. 2, 2016) (quoting *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011)); *Hoffa Eng'g, LLC v. Craney*, at *10 (S.D. Ind. Mar. 12, 2007). Here, Meineke's claims extend beyond trademark infringement and contemplate "amounts due and owing under the Franchise Agreement," and "[l]ost royalties." [Dkt. 31, at 21.] Losses associated with goodwill and control, though, are necessarily separate and intangible. *See BrightStar Franchising, LLC v. Foreside Mgmt. Co.*, 808 F. Supp. 3d 870, 889 (N.D. Ill. 2025) (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 902 (7th Cir. 2001) for its observation that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill"); *Shure, Inc. v. ClearOne, Inc.*, 2018 WL 1371170, at *15 (N.D. Ill. Mar. 16, 2018).

These elements, too, are satisfied.

### C. Balance of Harms and the Public Interest

Moriarty argues that the balance of harms tips in his favor. Not so. Though he says that an injunction would "effectively shut[] down his business," so that he'd "suffer loss of livelihood, employees, and customer relationship," dkt. 33 at 5, the Seventh Circuit has rejected such a "melodramatic interpretation" in the past. *Re/Max*, 272 F.3d at 432. In *Re/Max*, it emphasized that the "injunction does not prohibit [defendant] from maintaining relationships with existing clients or developing relationships with new clients." *Id.*, at 433. Likewise for Moriarty, who is similarly asked only to cease use of Meineke's "trademarks, trade dress, and any other indicia of affiliation." [Dkt. 35, at 8.]

Meanwhile, despite Moriarty's protests to the contrary, Meineke's harms are neither speculative nor compensable. Again, the well-established harms associated with no control over one's own brand are concrete and immediate—stemming from Meineke's present "duty to make sure that the good or service really is of consistent quality, i.e., really is the same good or service." *Gorenstein* 874 F.2d at 435. Once more, the court is particularly persuaded by Meineke's assertion that it previously mitigated customer disputes with Moriarty, which it can no longer do. *See, e.g.*, *Azhar Chaudhry*, 2015 WL 5159859, at *4 ("reasonable to conclude that this pattern of behavior will continue"). Further, Meineke has declared its past practice of replacing lost franchises to "retain its goodwill and developed market share," which is naturally made more difficult when the market remains occupied. [*See* Dkt. 26-2, at 9–10 ¶¶ 47–48, 51.] Moriarty does not respond to this, either in challenging the harm or establishing why his speculated loss of livelihood is more genuine. As this court sees it, he remains free to operate independently under an injunction, whereas Meineke's ability to re-enter the market is considerably hampered without one. [*See id.*, at 11, ¶ 53 ("a prospective franchisee of that market would generally prefer to purchase a resale location or one where the former franchisee is not competing against it contemporaneous with the transition").]

Finally, though Moriarty says the public is disserved by "threatening a local business that customers rely upon for service and employees rely upon for their livelihoods," he is again not prevented from operating independently. [Dkt. 33, at 6.] Meanwhile, "it is well established that the public interest would be served by the injunction because enforcement of the trademark laws prevents consumer confusion." *Azhar Chaudhry*, 2015 WL 5159859, at *5 (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Indeed, the "public also has an interest in knowing with whom they do business." *Re/Max*, 272 F.3d at 432–33. So long as Moriarty holds himself out as a franchisee, customers will inevitably be misled into believing they are transacting with a national chain, not an independent operator.

For these reasons, the court finds that the balancing considerations weigh in Meineke's favor. Particularly given Meineke's high likelihood of success under the Lanham Act, then, the court agrees that the circumstances warrant injunctive relief.

## IV. Conclusion

Meineke's motion for a preliminary injunction is granted in part. The court orders Moriarty to (1) cease and desist from using the Meineke trademarks, phone number, and other intellectual property; (2) remove all signage, promotional items, and materials bearing Meineke indicia; and (3) file by March 25, 2026 a verified statement detailing compliance.[4]

Enter: 25-cv-9239
Date: March 13, 2026

_____
Lindsay C. Jenkins

---

[4] The court defers Meineke's request for attorney fees and costs to disposition of the merits of the case, noting that doing so will not cause irreparable harm. *See P.P. & K., Inc. v. McCumber*, 1994 WL 69417, at *3 (N.D. Ill. Feb. 25, 1994) (deciding the same in analogous posture). So, too, will it refrain from ordering immediate return of Meineke-marked materials, since the irreparable harms that Meineke emphasizes are connected to Moriarty's outward *use* of its materials. Moriarty is nonetheless welcome to deliver them, and if discrete harms emerge, Meineke is welcome to re-file and again request such relief.